# IN THE COURT OF APPEALS OF IOWA

No. 21-0059
Filed April 28, 2021

**IN THE INTEREST OF A.P., A.P., and A.P.,**
**Minor Children,**

**P.S., Mother,**
　　Appellant,

**A.P., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Appanoose County, William Owens, Associate Juvenile Judge.

　　The mother and father separately appeal the termination of their parental rights to their three children.  **AFFIRMED ON BOTH APPEALS.**

　　Jonathan Willier, Centerville, for appellant mother.

　　Robert F. Bozwell Jr., Centerville, for appellant father.

　　Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

　　Debra A. George of Griffing & George Law Firm, PLC, Centerville, attorney and guardian ad litem for minor children.

　　Considered by Bower, C.J., Doyle, J., and Potterfield, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

The mother and father separately appeal the termination of their parental rights to their three children, born in 2010, 2012, and 2018. The juvenile court terminated each parent's rights to the two oldest children pursuant to Iowa Code section 232.116(1)(f) (2020) and to the youngest child pursuant to section 232.116(1)(h). On appeal, the mother concedes the statutory grounds for termination were met but argues termination of her rights is not in the children's best interests so the court should have established a guardianship in the paternal grandmother in lieu of termination. The father challenges the statutory grounds or, in the alternative, maintains he should have been given more time to work toward reunification. He also maintains termination of his rights is not in the children's best interests.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) became involved with this family this time[1] in June 2018, with a founded report the parents were caring for the two oldest children—the youngest was not yet born—while using methamphetamine. The two oldest were formally removed from the parents' care in August 2018.

After the youngest child's birth in December 2018, she remained in the mother's care until May 2019, when the mother was again showing signs of substance abuse and tested positive for methamphetamine. The youngest child was then also formally removed from the parents' care. The oldest two children

---

[1] The two oldest children were previously subjects of child-in-need-of-assistance proceedings in 2015; that case was successfully closed.

were originally placed with their paternal aunt before moving to the home of their paternal grandmother in October 2018.[2] The youngest child joined them at the paternal grandmother's in May 2019. All three children remained in her care and custody through the time of the termination hearing, which took place on October 1, 2020.

At the time of the termination hearing, the mother had begun substance-abuse treatment a few months earlier—about two years into the case.[3] Between when she started on June 23 and the last date the DHS worker had an update, September 10, the mother had attended five sessions. However, on September 10, she tested positive for THC, methamphetamine, and MDA (Sally). The mother admitted smoking marijuana but maintained the other positive results were inaccurate. She was in a romantic relationship with a man other than the father; the man is a registered sex offender who, according to the mother's testimony, uses methamphetamine. There was a warrant out for his arrest at that time, but the mother remained committed to having a relationship with the man. The mother was living with the maternal grandmother and the maternal grandmother's boyfriend. The maternal grandmother provided some of the childcare for the children and was approved to supervise the mother's visits with them. However, the home was not large enough for the three children to move in, and there were

---

[2] The two oldest children were transitioned from the paternal aunt's home to the paternal grandmother's home in October 2018 after the aunt expressed she was unable to continue as the children's caregiver. The State did not move for change of disposition until December, and the court granted the motion in January 2019, placing the oldest children in the legal custody of their paternal grandmother at that time.

[3] The mother entered inpatient substance-abuse treatment earlier in the case but left after only a few days.

some recent questions raised about the mental health of the grandmother's boyfriend, who may have attempted to overdose while the children were present.

The father was incarcerated for most of the case—from December 2018 until February 2020. He testified he continued to drink alcohol and smoke marijuana after he was paroled from prison but maintained he had not used methamphetamine since December 28, 2018. Like the mother, he tested positive for methamphetamine and THC on September 10 and maintained the results were in error. The father was living in a one-bedroom apartment with his current girlfriend, who was pregnant with the father's child. The father had previously moved out of his shared home with the woman because she perpetrated domestic violence against him.

The father also has two other children with two other women who were not at issue in this appeal (not counting the girlfriend's unborn child). During this case, the mothers of the other children and the paternal grandmother arranged for all of the siblings to spend time together. The DHS worker testified this was expected to continue in the future even if these parents' rights were terminated.

The juvenile court terminated both parents' rights to the oldest two children pursuant to section 232.116(1)(f) and to the youngest child pursuant to section 232.116(1)(h). The parents separately appeal.

## II. Standard of Review.

We review termination proceedings de novo. *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021). "As always, our fundamental concern is the child[ren]'s best interests." *Id.* at 120 (citation omitted).

**III. Discussion.**

    **A. Mother's Appeal.**

The mother concedes the statutory grounds for termination were met. But she maintains termination of her parental rights is not in the children's best interests, so the juvenile court should have established a guardianship in the paternal grandmother in lieu of termination. *See* Iowa Code §§ 232.117(5) (allowing the court, after a termination hearing, to not terminate parental rights and instead enter a permanency order in accordance with section 232.104); 232.104(2)(d) (allowing the court to enter a permanency order transferring custody and guardianship of the children to a suitable a person).

In order to establish a guardianship under section 232.104(2)(d), the court must determine by convincing evidence all of the following:

        a. A termination of the parent-child relationship would not be in the best interest of the child.
        b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
        c. The child cannot be returned to the child's home.

Iowa Code § 232.104(4). The only requirement in dispute is whether termination of the mother's rights is not in the children's best interests.

Like the juvenile court, we conclude termination of the mother's rights is in the best interests of these children. As we have often repeated, "[a] child's safety and *the need for a permanent home* are now the primary concerns when determining a child's best interests." *In re J.E.,* 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) (emphasis added). "A guardianship is not permanent, and the children would not experience the certainty of adoption." *In re A.M.,* No. 19-0350, 2019 WL 2373643, at *5 (Iowa Ct. App. June 5, 2019). For this

reason, "a guardianship is not a legally preferable alternative to termination." *In re W.M.*, ___ N.W.2d ___, ___, 2021 WL 1228087, at *7 (Iowa 2021) (citation omitted). And an otherwise appropriate decision to terminate "is not to be countermanded by the ability and willingness of a family relative to take the child." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (citation omitted).

Here, the mother has barely scratched the surface of dealing with her methamphetamine use, more than two years after this DHS case opened.

> This is exactly the sort of case where we must not deprive [children] of permanency on the hope [the parent] will get better. . . . [W]e cannot deprive these children of a stable home on the hope that [the mother] will someday be able to succeed in her efforts to remain sober.

*W.M.*, 2021 WL 1228087, at *6. In reaching this conclusion, we also note that the mother and paternal grandmother do not have a relationship that is free of conflict.[4] *Cf. id.* at *7 (providing, "There are some instances where a guardianship may be appropriate, where, for example, 'the mother and the [guardian relative] have a close, mature, and healthy relationship that is free of conflict'" (citation omitted)).

We have also considered that the oldest child, who was ten at the time of the termination hearing, testified he would like his parents to "get a second chance." While the oldest child was not "*over* ten years of age" at the time of his testimony, Iowa Code § 232.116(3)(b) (emphasis added),[5] we do not ignore his

---

[4] The social worker testified "[t]here was a period of time where [the two] were not getting along" and "[o]ther times they just don't communicate." She also stated, "Currently, in the last several months, they have been [communicating], and that's gone fine, and there haven't been any concerns."

[5] As we have noted before, the statute does not include children age ten and over; it specifically states "*over* ten years of age," which we understand to mean at least eleven years old. Iowa Code § 232.116(3)(b) (emphasis added); *compare* Iowa

testimony. *See A.S.*, 906 N.W.2d at 478 (suggesting preference of young child may be considered, stating, "Here, the child at age two is too young to express a preference"); *A.D.*, 2020 WL 7022391, at *3 (considering objections of both children, even though one was not over the age of ten). However, we still conclude termination of the mother's rights is in these three children's best interests. A guardianship would be especially troubling for the youngest sibling—who was not yet two years old—and the DHS worker testified it was important for the oldest sibling to not have "a different permanency goal and a different legal status than his siblings" because "one of the things that [the oldest] expressed to [her] over and over was wanting to make sure that he stayed with his siblings." *See A.S.*, 906 N.W.2d at 477 (concluding termination instead of a guardianship was in the two-year-old's best interests, in part because of the long duration the guardianship would be needed).

We affirm the termination of the mother's parental rights.

**B. Father's Appeal.**

The father challenges the statutory grounds for termination. In the alternative, he maintains he should be given more time to work toward reunification. He also maintains termination of his rights is not in the children's best interests.

As to the statutory grounds for termination, the father only challenges the final element of paragraphs (f) and (h), arguing the children could be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4),

---

Code § 232.116(1)(f)(1) (involving children "four years of age or older"). *See also In re A.D.*, No. 20-1182, 2020 WL 7022391, at *3 n.6 (Iowa Ct. App. Nov. 30, 2020).

(h)(4). While the father had employment and a home at the time of the termination hearing, he testified he was living in a one-bedroom apartment with his pregnant girlfriend. He conceded there was "probably not" space for the three children to move in and acknowledged that there were stairs to get into the apartment, which would be an issue for the middle child who uses a wheelchair. He also testified his brother had a "huge house" he might be able to stay in with the children but admitted he had not spoken to his brother about it and did not "know if that is an option." Without housing in place to take the children, the father could not resume custody of his children at the time of the termination hearing. *See In re Z.P.*, 948 N.W.2d 518, 525 (Iowa 2020) (affirming termination where parent "was not prepared to assume a parenting role at the time of trial").

In passing, the father also states, "One of the options available to the court would have been to provide additional time to the father . . . , however, the court failed to do so." We understand this to be argument for a delay in permanency under Iowa Code section 232.104(2)(b). The juvenile court considered this option but pointed out that both parents were already given much more time than contemplated by the statutes governing termination. The father had already received additional time to work toward reunification and, even after those delays, could not take custody of the children due to a recent positive test for methamphetamine and his lack of housing for them. We agree with the juvenile court that more time is not warranted.

Finally, the father challenges whether termination of his rights is in the children's best interests. *See* Iowa Code § 232.116(2). The father was not yet

able to provide the children a safe, stable home, which is what they need and deserve. Termination of the father's rights is in the children's best interests.

We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**